IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MONICA ROMERO AND VIOLA ACOSTA,

      Plaintiffs,

v.                                                               No. CIV-O3-1451 BB/ACT

SEARS, ROEBUCK AND CO.,
A New York corporation,

      Defendant.

## MEMORANDUM OPINION AND ORDER

      This matter comes before the Court for consideration of Defendant's Motion for Summary Judgment filed September 7, 2004. ("Motion," Doc. 40.) The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Defendant's Motion should be GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

      Plaintiffs Acosta and Romero began working in the appliance department at the Sears Cottonwood mall store in March 2002, at the time the store opened. (Motion Ex. F, Acosta Dep. at 8:6-25; Response Ex. 3, Romero Dep. at 6:10-7:7.) Fred Thurman was the manager of that department. (See Response at Ex. 7, Thurman Dep. at 70:1-71:18.) The appliance department was initially organized into three areas: 20/46--vacuums and refrigerators; 3/57--computers and electronics; and 22/26--cooking and washers/dryers. (Motion Ex. F, Acosta Dep. at 9:1-14.) Both Plaintiffs were initially assigned to 20/46 although Acosta had requested to work in 22/26. (Motion Ex. F, Acosta Dep. at 9:15-10:13; Response Ex. 3, Romero Dep. at 7:21-22.) Of the

1

three groups, Division 22/26 paid the highest commission rates and had the highest annual sales volume; 3/57 was the lowest and 20/46 was in the middle.[1] (Reply, Ex. C, Thurman Dep. at 40:15-18; 97:80049:4.)  Acosta told Thurman that she was dissatisfied with this assignment but Thurman told her that if she kept her sales up, she had a good chance of going to Division 22/26. (Response Ex. 4, Acosta Dep. at 10:4-8.)

Approximately three months later, Sears consolidated the appliance department into two groups.  (Response Ex. 4, Acosta Dep. at 10:14-11:10.)  Thurman announced the reorganization by asking Plaintiffs if they would like promotions.  (Response Ex. 3, Romero Dep. at 7:23-8:11.) The resulting sales groups were 22/26/46 (cooking, washers/dryers, and refrigerators) and 3/20/57 (computers, electronics and vacuums).  (Motion Ex. F, Acosta Dep. at 10:14-11:12.)

At the beginning of March 2003, ten months later, Defendant re-structured the departments again to restore them to their original organization.  (Response Ex. 7, Thurman Dep. at 70:12-72:5.)  Thurman asked for volunteers to move to the new sales teams but no volunteers stepped forward.  (Motion Ex. C at 3 & Ex. D at 2, Sears Responses to Charges of Discrimination.)  When Acosta  asked Thurman how he would re-assign people, Thurman told her that it would be based on sales and performance.  (Motion Ex. F, Acosta Dep. at 19:3-11; 22:17-24.)  Acosta was number three in sales and performance and Romero was number four, so they expected to remain in Division 22/26, the higher paying division.  (Id.; Response Ex. 2 at 1.) Instead, Plaintiffs were moved to their original Division, 20/46.  (Motion Ex. G, Thurman e-mail.)

---

[1]Generally, when a Defendant submits new evidence in a reply brief a court must either ignore it or permit the plaintiff to file a surreply before entering judgment against the nonmoving party. Beaird v. Seagate Technology, Inc., 145 F.3d 1159, 1163-64 (10th Cir. 1998).  The Court is using this evidence to deny Defendant summary judgment so Beaird does not control.

Thurman explained that at the time of the first reorganization, he had agreed with Geoff Sharr, the store manager, that if the departments were ever reorganized back to their original structure that all of the employees would be returned to where they had been at the time of the first reorganization.[2] (Response Ex. 7, Thurman Dep.at 71:25-72:5.) In fact, not all employees were returned to where they had worked at the time of the first reorganization. (Response Ex. 7, Thurman Dep. at 72:6-17.) Mike Maguire, a white male, was moved to 20/46 although he had originally been in 22/26. (Id.; Id. Ex. 4, Acosta Dep. at 51:6-7.) Thurman explained that they needed more people in 20/46 and Maguire needed a change of venue to sell in a different area. (Id. Ex. 7, Thurman Dep. at 9-17.) Pat McKibben was moved to 20/46 although he had originally been in 3/57, the lowest paying division. (Id. at 73:20-74:6.) Thurman explained this by stating that McKibben was a very good commission sales person and expressed an interest in selling appliances, so he was moved from 3/57 to 20/46. (Id. at 75:1-11.)

From this point, Plaintiffs proceeded differently. Upon learning of her new assignment, Plaintiff Romero complained to Amalia Tapia of Defendant's Human Resources Department on March 6 or 7th that the transfer was discriminatory. (Response Ex. 3, Romero Dep. at 20:5-23:3.) Tapia told Romero, "I don't know if it's just Hispanics in general or Hispanic women that Fred has a problem with." (Id. at 22:24-23:3.) On that same day, Romero met with Elaine Jordan, Store Operations Manager, to complain about discrimination. (Response Ex. 3, Romero Dep. at 28:14-24.) Jordan told her that the transfers were based on Year End Reviews and other

---

[2]There is some confusion in the record whether this alleged plan was to return employees to where they worked at the time the store opened, see e.g., Reply at 9, or whether the plan was to return employees to where they worked at the time of the first reorganization, see e.g., Response Ex. 7, Thurman Dep.at 71:25-72:5. The Court has viewed this dispute in the light most favorable to Plaintiffs, FDIC v. Oldenburg, 34 F.3d 1529, 1539 (10th Cir. 1994).

3

factors. (Response Ex. 1 at 1.) Then Romero met with the store manager, Geoff Sharr, to complain that the transfer was discriminatory, which Sharr denied. (Response at Ex. 3, Romero Dep. at 29:25-31:7.) Finally, she met with Fred Thurman, who told her that the transfers were based on a few different factors and numbers. (Response Ex. 3, Romero Dep. at 31:8-33:21.)

Shortly thereafter, Plaintiff Romero was scheduled to work five closing shifts in a row. (Response Ex. 3, Romero Dep. 36:23-37:13.) Plaintiff Romero was very distressed and felt that this schedule was retaliation for her complaints of discrimination because she had never before, and has never since, been scheduled to work five closing shifts in a row. (Response Ex. 3, Romero Dep. 37:8-13.)

A week or two after the second reorganization, Plaintiff Romero went on medical leave. (Response Ex. 3, Romero Dep. at 54:20--55:9.) Plaintiff Romero eventually returned to work on December 16, 2003, about eight months later, as a part-time employee. (Response Ex. 3, Romero Dep. at 42:3-42:6 and 46:6-17.)

On April 11, 2003, she filed an administrative discrimination charge. (Motion Ex. A.) She described the discrimination as taking place between March 8, 2003 and April 11, 2003. Her "Statement of Harm" reads:

> I was transferred along with all other Hispanic employees from sales department 46,26,22,20 to section 46 and 20 only which is a lower sales volume area allowing only white sales representatives to make higher sales commissions. I complained about the discriminatory transfer and was told that higher management made the decisions. After I complained about the discrimination I was forced to work each closing shift for over a week's period which no employee has been forced to do."

4

Her "Statement of Discrimination" reads: "I believe that I have been discriminated against based on my Nation[sic] Origin, Hispanic and after complaining about discrimination retaliated against by forced adverse shifts in violation of Title VII..."

Plaintiff Acosta continued to work for Defendant and on March 17, 2003, she filed an administrative charge of discrimination. (Motion Ex. B.) The only box she checked on that form was "Retaliation." She described the discrimination as taking place between February 24, 2003 and March 9, 2003. Her "Statement of Harm" reads, "I have been moved to divisions 20 & 46 in retaliation for complaining about the disparate discriminatory planning and assignments." Her "Statement of Discrimination" reads, "I believe that I have been discriminated against in retaliation for complaining about the disparate move into a lower volume division in violation or [sic] Title VII..."

Defendant alleges that Plaintiff Acosta earned more money after the transfer to 20/46 than she had in 22/26/46 (see Motion at 6); Acosta responds that Defendant scheduled her so that she worked without lunch breaks for seven months. (Response Ex. 5, Acosta Aff. at ¶¶ 9 & 11).[3]

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue about any material fact and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). It is the moving party's burden to show that there is no genuine issue of material fact. Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2002). In response, the nonmoving party

---

[3]The amount of money that a commissioned salesperson earns is influenced by many factors, including the rate of commission (Reply Ex. C, Thurman Dep. at 47:8-48:5), the season (id. at 48:6-9), the volume of sales (id. at 48:10-24; Response Ex. 4, Dfdt. Ex. B), and how many employees Defendant schedules to work (Reply Ex. C, Thurman Dep. at 111:8-14).

5

must come forward with "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith, 475 U.S. 574, 587-88 (1986).

To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case. Eck v. Parke, Davis & Co., 256 F.3d 1013, 1016-17 (10th Cir. 2001) (citing Hulsey v. K-Mart, Inc., 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party, Matsushita, 475 U.S. at 587, and views conflicting facts in the light most favorable to the non-moving party. FDIC v. Oldenburg, 34 F.3d 1529, 1539 (10th Cir. 1994). While the evidence need not be in a form that is admissible at trial, the content or substance of the evidence must be admissible. Pastran v. K-Mart Corp., 210 F.3d 1201, 1204 n.1 (10th Cir. 2000).

### III. DISCUSSION

Have Plaintiffs Exhausted a Claim of Hostile Work Environment?

As a threshold matter, the parties dispute which claims are before the Court. Defendant has moved for summary judgment on Plaintiffs' discrimination and retaliation claims. (Motion at 3.)[4] Plaintiffs contend that there is an additional claim, that of a hostile work environment. This

---

[4] A plaintiff's administrative charge is to be construed liberally. Foster, 365 F.3d at 1195. The box checked on the administrative charge is not dispositive. Gunnell v. Utah Valley State College, 152 F.3d 1253, 1260 (10th Cir. 1998). If the charge puts the employer on notice and permits the agency to attempt conciliation, a charge is adequate. Foster, 365 F.3d at 1195. It is clear from Defendant's administrative response that Defendant construed Acosta's charge as including a discrimination claim and not just retaliation. (See, e.g., Response to Acosta Charge of Discrimination, Dfdt. Ex. D at 1 & 3.) Therefore, Defendant had sufficient notice that Plaintiff was raising a claim of discrimination at the administrative level. Thus, this charge was administratively exhausted. Both Plaintiffs allege in their complaint that they were transferred to the lower paying division as a result of racial discrimination. (Complaint at ¶ 8.) Thus, Defendant has notice of Acosta's claims of both discrimination and

claim is raised for the first time in Plaintiffs' Response to the Motion for Summary Judgment. (Response at 1.)

Defendant alleges that no hostile work environment claim was administratively exhausted. (Reply at 1-2.) Such a failure would be dispositive because district courts lack jurisdiction to consider unexhausted claims. Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 799-800 (10th Cir. 1997). Plaintiffs dispute Defendant's allegation and point to the responses they made to Defendant before the EEOC. (Response at Ex. 1 & 2.)

There are two purposes to the requirement for exhaustion--to give the employer fair notice and to give the agency an opportunity to conciliate it. Woodman v. Runyon, 132 F.3d 1330, 1342 (10th Cir. 1997). A hostile workplace that violates Title VII is one that is permeated with "discriminatory intimidation, ridicule and insult" that is "sufficiently severe or pervasive to alter the conditions of a victim's employment." Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986). Plaintiff Romero has admitted that she did not raise a claim of hostile work environment in her administrative charge.[5] (Romero Dep., Pltf. Ex. 3 at 97.) With regard to Plaintiff Acosta, her administrative charge is bereft of any allegation of intimidation, ridicule or insult. Moreover, she complains of low level discrimination over two weeks. Given the nature of the acts she describes, the short period of time suggests that her charge is about the

---

retaliation.

[5] In her response to Defendant before the administrative agency, Plaintiff Romero mentions a charge of a hostile work environment that she made to the Defendant's Ethics Line (Response Ex. 1 at 2); however a statement made to Defendant's Ethics Line would not give EEOC notice of the charge and would not give the agency an opportunity to conciliate it. See, e.g., Pritchett v. Western Resources, Inc. 313 F.Supp.2d 1120, 1127, (D. Kan, 2004); Hayes v. MBNA Technology, Inc., 2004 WL 1283965, *5 (N.D. Tex.) (a court should go beyond the four corners of the EEOC charge only in limited circumstances).

7

reorganization, not a hostile work environment.  <u>Jeseritz v. Potter</u>, 282 F.3d 542 (8th Cir. 2002) (two weeks of offensive poster insufficient to support hostile work environment).  Her administrative charge fails to put Defendant on notice and fails to give the agency an opportunity to conciliate a claim of a hostile work environment.  <u>Woodman</u>, 132 F.3d at 1342.  Thus, she, too, has failed to exhaust her administrative remedies to this claim.

<u>National Origin Discrimination</u>

*Should the transfer be viewed as a demotion?*

Plaintiffs complain that the reorganization was a demotion due to their national origin. (Complaint at ¶ 13.)  Defendant disputes whether the transfer was a demotion.

Defendant has moved for summary judgment on the national origin discrimination claims solely on one point--that Plaintiffs cannot establish an adverse employment action.[6] The Tenth Circuit defines an adverse employment action liberally.  <u>Hillig v. Rumsfeld</u>, 381 F.3d 1028, 1031 (10th Cir. 2004).  It is not limited to monetary losses in the form of wages or benefits and the Court must take a case-by-case approach.  <u>Id.</u> However, mere inconvenience or an alteration of job responsibilities is not an adverse employment action.  <u>Berry v. Stevinson Chevrolet</u>, 74 F.3d 980, 986-86 (10th Cir. 1996.) Actions which have a de minimis impact on an employee's future employment prospects are not adverse actions.  <u>Hillig</u>, 381 F.3d at 1033.

---

[6]Defendant raises an additional argument for the first time in its Reply Brief, that Plaintiffs cannot demonstrate that they were treated less favorably than white co-workers. An argument raised for the first time in a reply brief may not be used to grant summary judgment against a non-moving party so the Court will not consider it. <u>Beaird v. Seagate Technology, Inc.</u>, 145 F.3d 1159, 1163-64 (10th Cir. 1998).

Here, there is evidence showing that Divisions 22/26 had a history of providing better commissions and higher sales volume. (Reply, Ex. C at 40:15-17 and 47:10-13.) Division 22/26 had the highest commission rate. (Reply Ex. C, Thurman Dep. at 47:8-22.) When the Divisions were to be reorganized and Defendant asked for volunteers, no employees volunteered to go to the lower commission, lower sales divisions, raising a reasonable inference that such divisions were uniformly viewed by all of the employees as less attractive. (Motion, Ex. C at 3; Ex. D at 2.) Where there is a universal preference for one job and against another, an inference may arise that the transfer is adverse. See Tart v. Illinois Power Co., 366 F.3d 461, 474 (7th Cir. 2004).

Defendant has argued that a transfer to a position paying the same salary is not an adverse employment action and offers evidence showing that Plaintiff Acosta actually earned more commissions after the transfer to the lower paying division. Sanchez, 164 F.3d at 532 (teacher's transfer to a more distant school not an adverse employment action because salary and benefits remained the same). Defendant cites to additional authority from other circuits.[7] However, all but one of Defendant's cases involved salaried workers where it was established that the compensation remained the same after the transfer. In the one case involving a commissioned salesperson, Williams, the court held that a transfer to a lower commission rate would be an

---

[7]Lederberger v. Stangler, 122 F.3d 1142, 1144 (8th Cir 1997) (changing which maintenance workers were overseen by a supervisor not an adverse employment action because it was not a material change in terms and conditions of employment); Doe v. Dekalb County Sch. Dist., 145 F.3d 1441, 1452 (11th Cir. 1998) (at trial, for ADA purposes, teacher must show that transfer was objectively, materially adverse); Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 886 (6th Cir. 1996) (supervisory nurse who was reassigned to unit nurse position did not experience adverse employment action where she enjoyed the same or greater level of pay and benefits and her duties were not materially modified); Williams v. Bristol-Myers Squibb Co., 85 F.3d 270, 274 (7th Cir. 1996) (salesperson transferred from one division to another did not experience adverse employment action when commission rate between divisions was the same and where commission income was only a minor portion of his income).

9

adverse employment action if not offset. 85 F.3d at 274.  Here, Plaintiffs were transferred to a Division where the commission rate was lower without evidence of offset, (Reply Ex. C at 47:8-15), so Williams actually contradicts Defendant's position.

Defendant argues that Geoff Sharr, Store Manager, "promised" Plaintiff Romero that if her earnings declined, Sears would "rectify any disparity," (Reply at 7), suggesting an offset. However, the only evidence of this "promise" is Plaintiff Romero's testimony that Sharr told her if her earnings went down she should let him know and "he would see what he could do." (Resp. Ex. 1, at 4.)

Viewing the adversity of this employment action in the light most favorable to Plaintiffs, Oldenburg, 34 F.3d at 1539, at this stage Plaintiffs have raised a question of fact on an adverse employment action. Garcia v. Pueblo Country Club, 299 F.3d 1233, 1241 (10th Cir. 2002) (disputing whether transfer was adverse was sufficient to preclude summary judgment).

*Defendant's non-discriminatory explanation*

Plaintiff's prima facie showing shifts the burden to Defendant to demonstrate a facially nondiscriminatory explanation for its action. Kendrick v. Penske Transp. Services, Inc., 220 F.3d 1220, 1226 (10th Cir. 2000).  Here, Defendant's employee has testified that the supervisors had originally agreed that if the departments were ever organized back to their original structure, all employees would be moved back to where they were when the departments were first reorganized.  (Response Ex. 7, Thurman Dep. at 71:25--72:5.) This facially nondiscriminatory reason meets Defendant's burden. Plaintiffs must therefore show evidence of pretext to survive summary judgment. Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995).

*Pretext*

Pretext is typically shown in one of three ways: (1) with evidence that the defendant's stated reason was false; (2) with evidence that the defendant acted contrary to a written company policy; or (3) with evidence that Defendant acted contrary to an unwritten company policy or contrary to company practice. Kendrick, 220 F.3d at 1230. Here there is evidence that corresponds to the first way of showing pretext.

Plaintiffs argue that two people were transferred to Division 20/46 that did not originally work in that Division, Mike McGuire and Pat McKibben. McGuire is a white male, (Response Ex. 4, Acosta Dep. at 51:6-7), who was assigned to Division 22/26 when the store first opened. (Response Ex. 7, Thurman Dep. at 72:6--17; 109:12--110:3.) In the disputed reorganization, he was transferred, like Plaintiffs, to Divisions 20/46. (Id.; Motion Ex. G, Thurman Feb. 24, 2003 e-mail.) Defendant argues that this shows the transfer was not discriminatory because a white male was moved to the less favorable Division. To the contrary, Defendant represented that everyone was to be moved back where they started; McGuire was not. Thus, Defendant's explanation is inaccurate and supports pretext. Kendrick, 220 F.3d at 1230.

As for McKibben, he should have been moved back to Division 3/57 but instead was moved to Division 20/46. (Response Ex. 7, Thurman Dep. at 73:20--75:11.) He was not

11

transferred back to where he originated,[8] again raising inferences whether Defendant's stated reason is false and a pretext for discrimination. Kendrick, 220 F.3d at 1230.

Furthermore, Defendant's explanation of McKibben's transfer raises additional questions. Plaintiff Acosta has stated that she was told the reorganization would be based on performance, (Response Ex. 4 at 18:7-19:11), but Thurman, the store manager, denies that anyone was told it would be based upon performance. (Response Ex. 7 at 76:23-77:10.) Yet, Thurman's explanation of McKibben's transfer shows he was moved to a higher paying division because of good performance. This contradiction is further evidence of pretext. Kendrick, 220 F.3d at 1230.

Thus, there is enough evidence of pretext to create a fact question on Defendant's stated reason and infer that Plaintiffs were demoted due to discrimination on the basis of national origin. Reeves Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000) ("...it is permissible for a trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."). Hence, Plaintiffs have provided enough evidence to survive summary judgment on their claims of national origin discrimination.

*Plaintiff Romero's Medical Leave*

Defendant argues that because Plaintiff Romero quit only two weeks after she was reassigned, she cannot establish a comparative earnings history. This argument goes to damages, not liability. Smith v. Secretary of Navy, 659 F.2d 1113, 1120 (D.C. Cir. 1981). Title VII is not

---

[8]Defendant argues that McKibben was not working at the time the Divisions were consolidated into two groups. (Reply at 8, citing Ex H and Ex. I.) However, Fred Thurman's deposition, seems to indicate that he may have been working. (Response Ex. 7 at 74:22-25.) Thus, there are conflicting facts as to McKibben's status at the time of the initial reorganization and the Court will view them in the light most favorable to Plaintiffs. Oldenburg, 34 F.3d at 1539.


limited to actions with tangible or economic consequences.  Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998).

Retaliation

In order to establish a prima facie case of retaliation, Plaintiffs must show that (1) they engaged in protected conduct opposing discriminatory practices, (2) they experienced an adverse employment action and (3) there is a causal relationship between the protected conduct and the adverse action.  Tran v. Trustees of State Colleges in Colorado, 355 F.3d 1263, 1265 (10th Cir. 2004). A causal relationship may be established by temporal proximity between the adverse action and the protected conduct.  Annett v. Univ. of Kansas, 371 F.3d 1233, 1239-40 (10th Cir. 2004).

*Plaintiff Romero has not experienced an adverse employment action.*

Plaintiff Romero claims that after she complained about the discriminatory reorganization of the Divisions, she was forced to work closing shifts for five days. (Response Ex. 3, Romero Dep. at 37:8-16.)  The issue is whether this is an adverse employment action.

The Tenth Circuit "liberally define[s] an adverse employment action [but] its existence is determined on a case by case basis and does not extend to a mere inconvenience or alteration of job responsibilities." Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1214 (10th Cir. 2003). The action must be "materially adverse to the employee's job status" which means that the conduct must be a "significant change in employment status such as...firing, failure to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." Id. at 1213.

Plaintiff Romero concedes that full-time sales associates like herself would routinely work three closing shifts in a row.  (Response, Ex. 3 at 40:19-25.)  She also concedes that she was only scheduled for five days one time and that she did not work this entire schedule because she was not feeling well and left early on one day and may not have come in for another.  (Response, Ex. 3 at 37:17-22.)  See Wells, 325 F.3d at 1214 (assignment was "for too brief a period to rise to the level of an adverse action").

Plaintiff offers no argument as to how this one schedule adversely affected her employment, nor any argument that this assignment altered her regular responsibilities, salary or benefits.  See Sanchez v. Denver Pub. Schools, 164 F.3d 527, 532 (10th Cir. 1998).  Indeed, Plaintiffs' Response is devoid of any legal argument about retaliation.[9]  (Response at 14-15.) Plaintiff has also failed to present evidence that this isolated schedule constituted a "materially adverse change in job responsibilities" and thus amounted to an adverse action.  Wells, 325 F.3d at 1214.  Accordingly, Plaintiff Romero has failed to establish a prima facie case of retaliation. Defendant's summary judgment motion will be granted as to this claim.

*Plaintiff Acosta did not engage in previous protected conduct.*

Plaintiff Acosta points to an unsworn and undated statement in which she wrote, "I told [Fred Thurman, Store Manager] on several occasions that I felt he was discriminating against me for being hispanic."  (Response, Ex. 4 Acosta Dep. Attchmt "Q".)  Informally complaining to one's

---

[9]Plaintiff Romero cites  Plaintiffs' Fact 13. The only fact potentially related to a claim of retaliation in Fact 13 is a new administrative charge of retaliation filed by Plaintiff Romero after this lawsuit began. (Response Ex. 3, Romero Dep. at 98:14-18; Motion Ex. E, showing that it was filed April 14, 2004.) Defendant has pointed out that this charge was still pending administratively at the time of its Motion and has argued that it should not be considered. (Motion at 3, n. 2.)  The Court agrees and will not consider it with regard to Defendant's Motion.

14

supervisor about discrimination can qualify as protected conduct. <u>Robbins v. Jefferson Co. School Dist. R-1</u>, 186 F.3d 1253, 1258 (10th Cir. 1999). However, an undated, unsworn general statement is not sufficient to raise a genuine issue of material fact whether she engaged in protected conduct. <u>Hayes v. Marriott</u>, 70 F.3d 1144, 1148 (10th Cir. 1995). Plaintiff Acosta has failed to establish a prima facie case and Defendant's motion for summary judgment will be granted with regard to her retaliation claim.

## IV. CONCLUSION

Plaintiffs' attempt to amend the complaint to add claims for hostile work environment is denied because such claims were not administratively exhausted and any such amendment would be futile. With regard to their claims of national origin discrimination, the Court finds that Plaintiffs experienced an adverse employment action and Defendant's motion for summary judgment will be denied. However, Defendant's motion for summary judgment on Plaintiffs' retaliation claims will be granted. In the case of Plaintiff Romero, the motion will be granted because her inconvenient schedule was not an adverse employment action. In the case of Plaintiff Acosta, the motion will be granted because she failed to raise a genuine issue of material fact to show that she engaged in protected conduct prior to being transferred to the lower paying division.

## V. ORDER

Defendant's motion for summary judgment on Plaintiffs' claims of national origin discrimination is denied as to both Plaintiff Romero and Plaintiff Acosta. Defendant's motion for

summary judgment on Plaintiffs' claims of retaliation is granted as to both Plaintiff Romero and Plaintiff Acosta.

**DATED** at Albuquerque, this 17th day of March, 2005.

_____
BRUCE D. BLACK
United States District Judge


Attorneys:

For Plaintiff
    Narciso Garcia, Jr.
    Garcia Law Office
    2033 San Mateo NE
    Albuquerque, N.M. 87110
    (505) 265-5010

For Defendant
    H. Nicole Werkmeister
    Narvaez Law Firm, P.A.
    P.O. Box 25967
    Albuquerque, N.M. 87125-0967
    (505) 248-0500